IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 9, 2007

## WENDELL DANIEL WASHINGTON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-06-78     Roy Morgan, Judge**

_____

**No. W2006-00922-CCA-R3-PC  - Filed March 7, 2007**

_____

The petitioner, Wendell Daniel Washington, pled guilty in the Madison County Circuit Court to nine counts of child rape and one count of especially aggravated kidnapping and, pursuant to the plea agreement, received an effective forty-five-year sentence to be served at one hundred percent.  In this appeal, he contends that he received the ineffective assistance of counsel and that he did not knowingly, intelligently, and voluntarily plead guilty.  Upon review of the record and the parties' briefs, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN, JJ., joined.

Mike Mosier, Jackson, Tennessee, for the appellant, Wendell Daniel Washington.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

At the petitioner's guilty plea hearing, the State presented the following factual account of the crimes: On June 17, 2004, the petitioner tied up his eight-year-old daughter, blindfolded her, forced her to perform oral sex on him, and anally penetrated her.  The petitioner videotaped the crimes, stopping periodically to readjust the video camera.  The petitioner's two sons from a previous marriage were outside playing, heard the victim screaming, and telephoned the police from a neighbor's house.  The police went to the petitioner's home, and the victim told them what had happened.  The petitioner's semen was discovered on a dress belonging to the victim, and the

petitioner gave a statement to police in which he admitted raping her. The petitioner also led police to the videotape.

At the evidentiary hearing, the petitioner testified that the trial court appointed attorney Steven Spracher to represent him. The appellant told Spracher that at the time of the crimes, he had not slept for six days and had been taking methamphetamine. On the morning of the crimes, the petitioner had smoked two grams of methamphetamine and had been walking around the house talking to himself. In addition to charges in state court, the petitioner was indicted on federal charges and received a competency evaluation for federal court. Spracher and the petitioner discussed an insanity defense for the petitioner's state trial, but Spracher wanted to wait until he received the results of the petitioner's federal competency evaluation. Spracher also considered having the petitioner mentally evaluated. However, Spracher had to take a leave of absence for an injury, and the trial court appointed a second lead attorney to represent the petitioner. The petitioner acknowledged that the federal competency evaluation concluded he was competent to stand trial, but he said he never received a full psychological evaluation.

The petitioner testified that his second lead counsel had two assistants and that one of the assistants represented him at the guilty plea hearing. Lead counsel thought that "it was pretty much an open and shut case," that a mental evaluation and a temporary insanity defense would not help the petitioner, and that the best thing for the petitioner was a plea bargain. At first, the district attorney (DA) refused to consider a plea agreement. However, the petitioner told lead counsel that he would plead guilty to especially aggravated kidnapping and one count of child rape in return for an effective twenty-three-year sentence to be served at one hundred percent. Lead counsel presented the offer to the DA, but the DA would not agree to it. The petitioner did not know what to do, so lead counsel told the DA that the petitioner would agree to a forty-year sentence. The DA refused that offer as well but agreed to let the petitioner plead guilty in return for an effective forty-five-year sentence.

The petitioner testified that he thought he was going to plead guilty to especially aggravated kidnapping and one count of child rape in return for the forty-five-year sentence. Lead counsel's assistant, who represented the petitioner at his guilty plea hearing, went over the plea form with him, and the form stated that the petitioner was pleading guilty to two counts in return for a forty-five-year sentence. The petitioner acknowledged that according to the guilty plea hearing transcript, he agreed to plead guilty to all nine counts of rape. He also acknowledged that if he had gone to trial, the State would have asked the trial court to sentence him to an effective sentence of one hundred forty-three years for the ten counts. The petitioner stated that he was "shuffled through a bunch of lawyers" and "never actually had one lawyer that represented my case fully all the way through." The petitioner said lead counsel could have done a better job negotiating with the State because the petitioner cooperated with the police, confessed, and turned over the videotape. He said lead counsel also should have followed through with a temporary insanity defense. He stated that he pled guilty because "I just done gave up, man" and because he did not feel that he had a choice. He stated that he would hate himself forever for what he had done to the victim.

On cross-examination, the petitioner acknowledged that he was only asking for a more lenient sentence and said that "y'all could leave the 45 years on there. I'm just asking for something like good days and a chance at parole." He acknowledged that the victim would have testified against him at trial and that DNA evidence showed his semen was on the victim's clothing. He admitted having sex with the victim and videotaping it but said he never anally raped her. He said that he had no excuse for what he had done to the victim but that his lack of sleep and a methamphetamine addiction were the bases for a temporary insanity defense. He acknowledged that at the guilty plea hearing, the trial court advised him of his rights, asked if he understood them, and asked if he was satisfied with his attorney. He also acknowledged that the trial court told him he was pleading guilty to all of the counts in return for a forty-five-year sentence to be served at one hundred percent.

Co-counsel testified that he worked for the public defender's office, worked with lead counsel on this case, and represented the petitioner at the guilty plea hearing. Lead counsel, co-counsel, and a third attorney became involved in the petitioner's case after Steven Spracher was injured. Co-counsel met with the petitioner three or four times and spoke with Spracher at least once. Co-counsel stated that he believed Pathways evaluated the petitioner and that Pathways concluded the petitioner was competent. The State never made a plea offer to the defense, so co-counsel approached the State and offered for the petitioner to plead guilty to two counts in exchange for a forty-five-year sentence. The State rejected that proposal but offered to let the petitioner plead guilty to all ten counts in exchange for a forty-five-year sentence. Co-counsel told the petitioner about the State's counter-offer, and the petitioner agreed to it. On cross-examination, co-counsel testified that there was overwhelming proof of the petitioner's guilt and that "what it came down to was basically damage control." He stated that he discussed plea negotiations and discovery with the petitioner and acknowledged that voluntary intoxication is not a defense.

The post-conviction court concluded that the petitioner was only concerned about his sentence, not his convictions. It noted that the petitioner's evaluation found him competent to stand trial and that he admitted to using methamphetamine voluntarily. Thus, the post-conviction court found no merit to a temporary insanity defense and concluded that it would not have helped the petitioner at trial. The post-conviction court stated that it had reviewed the guilty plea hearing transcript and that the trial court thoroughly questioned the petitioner and explained the pleas to him. The post-conviction court concluded that the petitioner had no defense to the crimes and that he pled guilty knowingly, voluntarily, and intelligently.

## II. Analysis

The petitioner claims that he received the ineffective assistance of trial counsel because his attorneys failed to investigate whether his drug use contributed to his committing the offenses and failed to seek a mental evaluation for him. He claims that he believed he had no choice but to plead guilty and that his attorneys' failure to confer and consult with him adequately resulted in unknowing and involuntary guilty pleas. The State claims that the post-conviction court properly denied the petitioner's request for post-conviction relief. We agree with the State.

To be successful in a claim for post-conviction relief, the petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

To pass constitutional muster, a guilty plea must be made voluntarily, understandingly, and knowingly. Hicks, 983 S.W.2d at 246 (citing Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969)); see also State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977). To determine the voluntariness and intelligence behind a guilty plea, the court must look to various circumstantial factors, i.e.,

the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Turning to the instant case, the petitioner testified at the post-conviction hearing that he was not contesting the length of his effective sentence but only wanted an opportunity to earn credit for good behavior and have an opportunity for parole. He never stated that but for counsel's errors he would not have pled guilty and would have insisted upon going to trial. He also testified that he thought he was pleading guilty to only two counts and that he would receive a forty-five-year sentence for those two convictions. However, our review of the guilty plea hearing transcript confirms that the trial court told the petitioner he was pleading guilty to nine counts of child rape and one count of especially aggravated kidnapping, that he would serve a total effective sentence of forty-five years, and that he would serve one hundred percent of that sentence. The trial court then repeated that the petitioner was pleading guilty to ten counts in exchange for a forty-five-year sentence to be served at one hundred percent and asked the petitioner if understood the pleas. The petitioner said yes, and the trial court asked the petitioner if he had discussed the plea agreement with his attorney. The petitioner again said yes. The record reflects that the State had overwhelming and damaging evidence against the petitioner, that counsel and the petitioner thought it was best for the petitioner to plead guilty, that counsel negotiated a plea agreement with the State and discussed the agreement with the petitioner, and that the petitioner decided to plead guilty in order to avoid a much harsher punishment. The petitioner has failed to demonstrate that his trial attorneys were ineffective or that his pleas were unknowing and involuntary. Thus, the post-conviction court properly denied his request for post-conviction relief.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE